UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
FRANK ENTEN,                            )
                                        )
           Plaintiff,                   )
                                        )
      v.                                )        Civil Action No. 09-1825 (PLF)
                                        )
DISTRICT OF COLUMBIA, *et al.*,         )
                                        )
           Defendants.                  )
_____ )

OPINION

           Plaintiff Frank Enten seeks a preliminary injunction barring defendants from

enforcing the District of Columbia's vending regulations against him when he sells political

buttons on the city's sidewalks.  Mr. Enten argues that his activities are constitutionally protected

speech and that restricting his button sales violates both the First Amendment to the U.S.

Constitution and District of Columbia law.  The Court heard oral argument on plaintiff's motion

on November 12, 2009.  After careful consideration of the parties' papers, the arguments made

by counsel before the Court, and the relevant statutes, regulations and case law, the Court will

deny plaintiff's motion.[1]

_____

           [1]        The Court has considered the following papers: the First Amended Complaint
("Compl."); Plaintiff's Application for a Preliminary Injunction ("Mot."); Defendants'
Memorandum in Opposition to Plaintiff's Application for Preliminary Injunction ("Opp.");
Plaintiff's Reply Memorandum in Support of his Application for a Preliminary Injunction
("Reply"); Defendants' Supplemental Brief Regarding Distribution of Vending Permits ("Def.
Supp."); and Plaintiff's Supplemental Memorandum in Support of his Application for a
Preliminary Injunction ("Pl. Supp.").

I.  BACKGROUND

Frank Enten is a retired Korean War veteran who periodically displays, discusses and sells historic and contemporary political buttons on the District of Columbia's downtown sidewalks in order to "express his commitment to the American tradition of political pluralism and to convey his adherence to certain political viewpoints."  Mot., Memorandum of Law in Support of Plaintiff's Application for a Preliminary Injunction ("Mem.") at 7.  The buttons' content ranges from historic statements such as "I Like Ike" to responses to current political issues such as "Proud To Be A Teabagger."  See Mot., Ex. 1, Affidavit of Frank Enten ("Enten Aff."); Reply, Ex. 2, Supplemental Affidavit of Plaintiff Frank Enten ("Supp. Enten Aff."). Although Mr. Enten agrees with the message conveyed by some of these buttons, he also displays buttons with whose message he disagrees in "a tribute to America's tradition of political liberty." See Enten Aff. ¶ 5.  Mr. Enten displays his buttons on a table and with a stand which he usually sets up on a sidewalk or in another public place.  See Enten Aff. ¶¶ 7-8.  He uses the display to attract the attention of passersby and to engage them in discussion about political issues related to the buttons.  See id. ¶ 10.

Because Mr. Enten has obtained neither a vending permit to sell his buttons nor a site license to sell them at a particular location, on numerous occasions from 1994 to the present officers of the Metropolitan Police Department ("MPD") have ordered Mr. Enten to cease his activities or face arrest or citation.  See Enten Aff. ¶ 13.  Mr. Enten complies with the officers' orders to cease his activities because he has been arrested for his activities on one occasion in the past.  See id. ¶¶ 13-14.

The Vending Regulation Act of 2009 requires that, with certain limited exceptions, "a person shall not vend from a sidewalk, roadway, or other public space" unless the person holds both a vending license and a specific site permit.  See D.C. Code. § 37-131.02(a).[2] A person may vend only from an approved location and must possess a permit for that particular location.  See D.C. Code. § 37-131.03(a); 37-131.04(a); D.C. Mun Reg. § 24-501.16.  The total number of vending locations in Ward 2, which includes the downtown commercial area, is capped at 350.  See D.C. Code. § 37-131.03(c).  The total number of licenses for sidewalk vendors is limited to double the number of vending sites in designated vending zones.  See D.C. Mun Reg. § 24-505.4.  In January 2007, Mr. Enten applied to the District of Columbia Department of Consumer and Regulatory Affairs ("DCRA") for both a permit and a license and paid the required application fee.  See Enten Aff. ¶¶ 16-20.  He has received no response — although under the regulations the agency must respond within 45 days.  See id. ¶ 24; D.C. Mun. Reg. § 24-505.1.

Mr. Enten filed this lawsuit on September 24, 2009, naming as defendants the District of Columbia, Mayor Adrian Fenty in his official capacity, Linda Argo in her official capacity as Director of the DCRA, and Cathy Lanier in her official capacity as Chief of the MPD. He alleges that the defendants are violating both District of Columbia law and the First Amendment, and he seeks both a preliminary and a permanent injunction preventing defendants from interfering with his button-selling activities, as well as certain declaratory relief.

---

[2]     At the time plaintiff filed his complaint, the Vending Regulation Temporary Act of 2009, 2009 D.C. Laws 18-4, was in effect.  It has since been replaced by the Vending Regulation Act of 2009, 2009 D.C. Laws 18-71 (codified at D.C. Code § 37-131.01 et seq.).  The relevant provisions are functionally the same.

## II.  PRELIMINARY INJUNCTION STANDARD

In deciding whether to grant emergency injunctive relief, the Court must consider (1) whether there is a substantial likelihood that plaintiff will succeed on the merits of his claim, (2) whether plaintiff will suffer irreparable injury in the absence of an injunction, (3) the harm to defendants or other interested parties should an injunction issue, and (4) whether an injunction would be in the public interest or at least not be adverse to the public interest.  See Davis v. Pension Benefit Guar. Corp., 571 F.3d 1288, 1291 (D.C. Cir. 2009) (citing CFGC v. England, 454 F.3d 290, 297 (D.C. Cir. 2006)).  Plaintiff is not required to prevail on each of these factors. Rather, these factors must be viewed as a continuum, with a stronger showing of one factor compensating for a weaker showing of another.  Davis v. Pension Benefit Guar. Corp., 571 F.3d at 1291-92.  "If the arguments for one factor are particularly strong, an injunction may issue even if the arguments in other areas are rather weak."  CityFed Fin. Corp. v. Office of Thrift Supervision, 58 F.3d 738, 747 (D.C. Cir. 1995).

## III.  DISCUSSION

Mr. Enten argues that the District of Columbia violates the First Amendment by imposing what he considers an impermissible prior restraint on his button-selling activities.  He also argues that the District is violating its own statute — the First Amendment Assemblies Act of 2004, D.C. Code § 5-331.01 et seq., which, according to Mr. Enten, exempts him from the permitting regulations.  The defendants maintain that Mr. Enten lacks standing to bring this lawsuit, and they dispute both his statutory and constitutional claims.  The Court will consider

first the defendants' challenge to Mr. Enten's standing, then his argument under the First

Amendment Assemblies Act, and finally Mr. Enten's constitutional arguments.

*A.  Standing*

In order to establish standing under Article III of the United States Constitution, a

plaintiff must show, at an "irreducible constitutional minimum," that (1) he has suffered an injury

in fact – the invasion of a legally protected interest; (2) the injury is fairly traceable to the

defendants' conduct (a causal connection); and (3) a favorable decision on the merits likely will

redress the injury.  Sprint Commc'ns Co., L.P. v. APPC Servs., Inc., 128 S. Ct. 2531, 2535

(2008) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)); see also North

Carolina v. EPA, No. 08-1225, slip op. at 6-7 (D.C. Cir. Nov. 24, 2009); Nuclear Info. &

Resource Serv. v. Nuclear Regulatory Comm'n, 509 F.3d 562, 567 (D.C. Cir. 2007) (quoting

Florida Audubon Soc'y v. Bentsen, 94 F.3d 658, 663 (D.C. Cir. 1996)); Northern Mariana

Islands v. United States, Civil Action No. 08-1572, 2009 U.S. Dist. LEXIS 110294 at *19-20

(D.D.C. Nov. 25, 2009).  The alleged injury in fact must be concrete and particularized and

actual or imminent, not conjectural, hypothetical or speculative.  See Friends of the Earth v.

Laidlaw, 528 U.S. 167, 180-81 (2000); Lujan v. Defenders of Wildlife, 504 U.S. at 560-61;

Worth v. Jackson, 451 F.3d 854, 858 (D.C. Cir. 2006); Sierra Club v. EPA, 292 F.3d 895, 898

(D.C. Cir. 2002).  If a plaintiff cannot meet all three prongs of this test, the Court must dismiss

the suit for lack of standing.

Defendants argue that Mr. Enten does not have standing because he has not shown

that a threatened injury is imminent.  When expressive activity is at issue, the court of appeals

has said: "A party has standing to challenge, pre-enforcement, even the constitutionality of a statute *if First Amendment rights are arguably chilled, so long as there is a credible threat of prosecution*." Chamber of Commerce v. Federal Election Comm'n, 69 F.3d 600, 603-04 (D.C. Cir. 1995) (emphasis added). See also A.N.S.W.E.R. v. District of Columbia, No. 08-7098, 2009 U.S. App. LEXIS at *5 (D.C. Cir. Dec. 15, 2009) ("While 'subjective 'chill' alone will not suffice to confer standing on a litigant bringing a pre-enforcement facial challenge to a statute allegedly infringing on the freedom of speech'. . . imminent threats commonly suffice.") (quotations omitted). "A credible threat of prosecution exists where a plaintiff's desired course of action is covered by a statute that is generally enforced." Unity08 v. FEC, 583 F. Supp. 2d 50, 59 (D.D.C. 2008). See also Seegars v. Gonzales, 396 F.3d 1248, 1252 (D.C. Cir. 2005). Mr. Enten states in his affidavit that on numerous occasions, MPD officers have approached him and inquired whether he has a license. See Enten. Aff. ¶ 13. When he responds that he does not, the officers typically inform him that he is violating District of Columbia law by selling his buttons without a license and that if he continues to do so he will be arrested or issued a citation. See id. On one occasion Mr. Enten was arrested, handcuffed and taken into custody; on others he has complied with the orders of the police to cease his activities and to pack up and move on. See id. ¶¶ 14-15. The Court concludes that Mr. Enten's asserted fear of arrest and citation is not an "imagined or wholly speculative" injury. Seegars v. Gonzales, 396 F.3d at 1252-1253 ("a credible statement by the plaintiff of intent to commit violative acts" and "actual threats of arrest made against a specific plaintiff are generally enough to support standing as long as circumstances haven't dramatically changed.").

Defendants also argue that because they have recently offered Mr. Enten a vending license and a site permit for the corner of 13th and L Streets in Northwest Washington, D.C., which he refused, any threat of prosecution is the result of his refusal to accept the proffered accommodation.  See Opp. at 6.  Therefore, they argue, he does not have standing.  Mr. Enten responds that this offer does not provide him the complete relief he seeks — namely, a declaration that under the First Amendment he is exempt from the permit and licensing requirements restricting his right to display, discuss and sell his political buttons and a further declaration that those regulations are unconstitutional to the extent they govern the sale of expressive items protected by the First Amendment.  The offer of a vending license and a site permit for a particular location, he argues, neither moots his First Amendment claim nor deprives him of standing.  The Court agrees.  See Parker v. District of Columbia, 478 F.3d 370, 377 (D.C. Cir. 2007) ("[W]hen considering whether a plaintiff has Article III standing, a federal court must assume *arguendo* the merits of his or her claim.").

### B.  The First Amendment Assemblies Act

The First Amendment Assemblies Act sets forth the District of Columbia's policy with regard to expressive public gatherings.  It defines a First Amendment assembly as "a demonstration, rally, parade, march, picket line, or other similar gathering conducted for the purpose of persons expressing their political, social, or religious views."  D.C. Code § 5-331.02(1).  Persons and groups have a right to organize and participate in "peaceful First Amendment assemblies" on the streets and sidewalks of the District of Columbia "and to engage in First Amendment assembly near the object of their protest."  D.C. Code § 5-331.03.

Furthermore, persons who are engaged in such an assembly are not required to "give notice to, or obtain a permit or plan from, the Chief of Police, the Director of the Department of Consumer and Regulatory Affairs, or any other District official or agency as a prerequisite for *selling demonstration-related merchandise* within  . . . an assembly covered by subsection (d) of this section."  D.C. Code § 5-331.05(h) (emphasis added).  Assemblies covered by subsection (d) include those where "[t]he assembly will take place on public sidewalks and crosswalks and will not prevent other pedestrians from using the sidewalks and crosswalks."  D.C. Code § 5-331.05(d)(1).

If Mr. Enten's activities constitute a First Amendment assembly within the meaning of the Act, then he would be exempt from the District's vending permit and site license requirements.  Mr. Enten argues that his button-selling activities are protected by the Act, because they are conducted "for the purpose of . . . expressing [his] political . . . views" and are a "similar gathering" to a demonstration, rally, parade, march or picket line.  D.C. Code § 5-331.02(1).  He further argues that the statute contemplates gatherings of as few as one person, see D.C. Code § 5-331.05(d) (referring to a "person or group"), and that even if the statute required that multiple people be engaged in the gathering, he seldom remains a gathering of one for long, because passersby stop and engage with him in "lively conversation concerning the issues and events evoked by those buttons."  Mem. at 14.  The Court is not persuaded by these arguments and therefore concludes that plaintiff is not likely to succeed on the merits of this claim.

First, while the statute may use the word "person" where the plural would be more apt, it is axiomatic that a single person cannot be a "gathering" or an "assembly."  Nor may a

single person engage in a demonstration, rally or parade.  More importantly, the policy

underlying the First Amendment Assemblies Act is to permit persons to "organize" and

participate in First Amendment assemblies "near the object of their protest."  D.C. Code

§ 5-331.03.  There is no "object" of Mr. Enten's protest; indeed, there is no protest at all.

Finally, the merchandise sold in connection with First Amendment assemblies must be

"demonstration-related."  D.C. Code § 5-331.05(h).  Mr. Enten's sales of buttons are not so

related, as there is no demonstration.  The mere recitation of this statutory language makes plain

the absurdity of Mr. Enten's argument.

        While the legislative history to the First Amendment Assemblies Act is brief,

what does exist also suggests that the statute's drafters did not intend it to apply to activities like

those engaged in by Mr. Enten.  The Report of the Council of the District of Columbia's

Committee on the Judiciary stated: "Subsection 105(h) [codified at D.C. Code § 5-331.05(h)]

includes . . . permission for the sale of *demonstrated-related* merchandise. This provision grew

from the practice of MPD threatening people selling buttons, literature, and bumper stickers with

'vending without a permit.'  Such regulation is inappropriate as applied to *brief sales of*

*materials* during a First Amendment assembly."  D.C. Comm. Rep., B. 15-968 (Dec. 1, 2004)

(emphasis added).  The use of the phrases "demonstration-related" and "brief sales" suggests that

the Committee contemplated that the statute apply to one-time expressive protests,

demonstrations or similar events with incidental vending, not to regularized, non-demonstration

related gatherings where a significant activity is the sale of merchandise.  The First Amendment

Assemblies Act does not exempt Mr. Enten from the District's vending and permitting

requirements.

## C.  Constitutionally Protected Speech under the First Amendment

Mr. Enten argues that his activities are constitutionally protected speech for two separate reasons.  First, he maintains that some of the buttons he displays, discusses and sells are protected speech because they express his personal beliefs.  Second, he argues that although he disagrees with some of the buttons, displaying, discussing and selling them is his "personal paean to political pluralism."  Mem. at 15.  Mr. Enten explains in his affidavit that "whether I agree with the views expressed by a particular button or not, I believe that the wide range of viewpoints represented by my buttons is a tribute to America's tradition of political liberty."  Enten Aff. ¶ 5.

Mr. Enten is correct that the display of political buttons that express an idea or message with which one agrees is core political speech protected by the First Amendment.  See Bd. of Airport Comm'rs v. Jews for Jesus, Inc., 482 U.S. 569, 576 (1987) ("the wearing of a button that contains a political message . . . [is] protected speech").  The fact that such items are sold rather than distributed free of charge or simply displayed does not affect their status as protected speech.  See, e.g., Lakewood v. Plain Dealer Pub. Co., 486 U.S. 750, 756 n.5 (1988) ("Of course, the degree of First Amendment protection is not diminished merely because the newspaper or speech is sold rather than given away."); ISKCON of Potomac, Inc. v. Kennedy, 61 F.3d 949, 953-54 (D.C. Cir. 1995) ("[E]xpressive materials do not lose their First Amendment protection merely because they are offered for sale. . . .  Indeed, the [Supreme] Court long ago reminded us 'that the pamphlets of Thomas Paine were not distributed free of charge.'") (quoting Murdock v. Pennsylvania, 319 U.S. 105, 111 (1943)).  Accordingly, part of Mr. Enten's activity — the display and sale of buttons that express his own personal political beliefs is constitutionally protected speech.

Mr. Enten also asserts that his act of displaying and selling buttons that contain diverse political statements, including statements with which he disagrees, is an expression of his belief in the history of "unfettered political discourse" in the United States, see Compl. ¶ 21, and a tribute to its traditions of "political pluralism" and "political liberty."  Mem. at 7; Enten Aff. ¶ 5.  The problem with this argument is that while politically symbolic activity may receive First Amendment protection just as if it were a political statement made in spoken words or text, see Hurley v. Irish-American Gay Group of Boston, 515 U.S. 557, 569 (1995), the buttons themselves do not communicate the idea of political pluralism or Mr. Enten's belief in the country's tradition of political liberty.  To the extent they convey any message at all, the buttons convey only the messages depicted on their faces — such as "I Like Ike" and "Kennedy for President."

Recently, however, alongside his buttons Mr. Enten has begun offering passersby an informational sheet to explain his activities.  See Enten Aff. ¶ 11.  This informational sheet states in part:

> To celebrate the political liberty which I helped defend and which I continue to hold dear, I publicly display, eagerly discuss, and gladly sell the political buttons you see here.
>
> I agree with some of the buttons, and disagree with others.  (I am happy to tell you which ones fall into which category and why.)  But whether I agree with each button or not, taken as a whole they represent the American tradition of unfettered political discourse.

Enten Aff., Ex. 1.[3]  With this recent addition, the Court concludes that Mr. Enten's activity is

---

[3]    There is no reason to doubt the authenticity of Mr. Enten's purpose.  He raises so little money from his button sales that it is extremely unlikely that his assertion that his purpose is to express his political viewpoints is a sham.  See Pl. Supp., Frank Enten's Post-Hearing Affidavit ¶¶ 3-6.

constitutionally protected because it expresses an identifiable message.  As the Supreme Court

has explained, protected activity may involve a combination of diverse and sometimes

contradictory messages — such as the variety of opinions on a newspaper's editorial page or the

various contingents in a parade — and still be protected.  See Hurley v. Irish-American Gay

Group of Boston, 515 U.S. at 569-70.

### D.  The District of Columbia's Permitting and Licensing Scheme

#### 1.  Time, Place, and Manner Restrictions

Even though Mr. Enten's activities are constitutionally protected, the question

remains whether the District of Columbia statute requiring prospective sidewalk vendors to

obtain a vending license and a site permit, see D.C. Code. § 37-131.01, et seq., and the

regulations implementing the statute, D.C. Mun. Reg., § 24-501, et seq., are permissible under

the First Amendment.  See ISKON of Potomac, Inc. v. Kennedy, 61 F.3d at 954.  In traditional

public forums such as the sidewalks on which Mr. Enten seeks to display and sell his buttons,

there is a "'heavy presumption' against the validity of a prior restraint" on speech.  Forsyth

County v. Nationalist Movement, 505 U.S. 123, 130 (1992) (quoting Bantam Books, Inc. v.

Sullivan, 372 U.S. 58, 70 (1963)).  As a result, any permitting or licensing requirements

controlling the time, place, and manner of the speech of individuals wishing to engage in

expressive conduct in a public forum "must not be based on the content of the message, must be

narrowly tailored to serve a significant governmental interest, and must leave open ample

alternatives for communication."  Id.  See also ISKON of Potomac, Inc. v. Kennedy, 61 F.3d at

954; A.N.S.W.E.R. Coalition v. Kempthorne, 537 F. Supp. 2d 183, 196 (D.D.C. 2008).

Moreover, the regulatory scheme "may not delegate overly broad licensing discretion to a government official." Forsyth County v. Nationalist Movement, 505 U.S. at 130.

   The parties agree that both the District's statute requiring that sidewalk vendors obtain a vending license and a permit to vend at a specific site and the implementing regulations are content neutral.  Accordingly, the questions before the Court are whether these time, place and manner restrictions are narrowly tailored, leave open ample alternative channels of communication, and do not unduly delegate authority to a government official.

## 2.  Narrowly Tailored

   "The ''narrowly tailored' portion of the time place or manner test requires that there be a *real nexus* between the challenged regulation and the significant governmental interest sought to be served by the regulation.'" A.N.S.W.E.R. Coalition v. Kempthorne, 537 F. Supp. 2d at 195 (quoting Community for Creative Non-Violence v. Kerrigan, 865 F.2d 382, 389 (D.C. Cir. 1989) (emphasis in original)).  "It is not enough that a regulation is facially reasonable, or that a governmental interest is significant; rather, it must be shown that a reasonable regulation is narrowly tailored *to substantially serve* a significant governmental interest." Id. (quoting Community for Creative Non-Violence v. Kerrigan, 865 F.2d at 389 (emphasis in original)). According to the defendants, the purpose of the requirement that sidewalk vendors obtain a vending license and a site specific permit is to ensure "the orderly flow of vehicular and pedestrian traffic, reliev[e] street and sidewalk congestion, promot[e] public safety, and facilitat[e] tourism and commerce." Opp. at 14.  Plaintiff argues that the permitting scheme is not narrowly tailored to serve these asserted interests because it does not distinguish between

large groups and individuals; it is superfluous given the city's other regulations of vendors; and

the site permit lottery is held too infrequently and the waiting period for a license is too long.

Plaintiff cites a number of cases in which a permitting scheme was invalidated

under the First Amendment for failure to distinguish between large and small groups, but all of

these cases dealt with permits for a one-time demonstration, parade or public performance.  The

purpose of permit requirements for such events typically is to ensure public safety and crowd

control — governmental interests that one protester or a small group of protesters likely would

not affect in the same way a large demonstration, parade or protest would.  Thus, where

permitting schemes are not narrowly tailored to regulate very small protests differently, they have

been found wanting under the First Amendment.  See, e.g., Cox v. City of Charleston, 416 F.3d

281, 285-86 (4th Cir. 2005); Community for Creative Non-Violence v. Turner, 893 F.2d 1387,

1392 (D.C. Cir. 1990).  In contrast, even a single vendor may affect the District's interests in the

orderly flow of vehicular and pedestrian traffic, relieving street and sidewalk congestion,

promoting public safety, and facilitating tourism and commerce.  The District has made a

reasonable determination that individual vendors are different from individual or small groups of

protesters because vendors are expected to occupy sidewalk space, at least periodically, for an

extended period of time, rather than for a one-time event.  As defendants aptly explain: "The only

way to ensure the number of vendors engaged in such continuous, long-term occupancy of any

one sidewalk remains manageable — and the only way to ensure that every would-be vendor has

a fair chance at a vending site — is to include everyone, from individuals to large conglomerates,

in the licensing and permit system."  Opp. at 14.

14

Plaintiff next argues that the District's site permit requirement is superfluous in light of the other statutory and regulatory vending restrictions which govern vending activity, such as the location of vendors near sidewalk edges, curbs, entranceways, crosswalks, driveways, and other vendors.  While the other regulations identified by Mr. Enten further the District's interest in certain aspects of regulating vending in public spaces, they serve different purposes than does the site permit requirement.  Specifically, these other regulations do not assign vending locations and do not regulate the number of vendors at any one location.  Since certain locations are significantly more desirable than others, an organized assignment process eliminates the possibility of chaotic competition for spots and ensures that the number of vendors in any particular area is not excessive.

Mr. Enten also argues that the permitting scheme is not narrowly tailored because it gives the District 45 days in which to inform an applicant for a vending license whether the application has been granted or denied, see D.C. Mun. Reg. § 24-505.1, and it only requires that the site permit lottery be held every two years.  See D.C. Mun. Reg.  § 24-515.26.   While a lengthy waiting period for a one-time parade or demonstration permit might be an unconstitutional restraint on marchers or demonstrators who wish to express themselves in response to current events, see, e.g., Grossman v. City of Portland, 33 F.3d 1200, 1206 (9th Cir. 1994), the 45-day waiting period for a vending license and possible two-year wait for a site permit do not limit Mr. Enten's First Amendment right to speak out in a timely manner on issues about which he cares.  As the District emphasized throughout its brief and at oral argument, Mr. Enten may display and discuss his buttons without a vending license or a site permit; these documents are required only for the *sales* of his buttons.  Thus, his expressive activity is not

15

restricted while he awaits a vending license and site permit; only the selling which is incidental to his expressive activity is restricted.  It is reasonable that the amount of time necessary to process permits for ongoing vending operations be greater than that allotted for processing permits for one-time marches, parades, demonstrations or rallies — the events considered in the cases upon which Mr. Enten relies.

   While Mr. Enten also argues that an applicant may have to wait indefinitely for a permit because in reality so few site permits are issued that an applicant is not guaranteed that the lottery will result in a permit for *any location* at all, evidence submitted by the defendants persuades the Court that the situation is not as dire as Mr. Enten suggests.  Samuel Williams, the District's Vending Coordinator for the most recent vending site lottery, stated in a declaration filed by defendants after oral argument that "[e]very person who submitted a valid and complete application and participated in the 2007 lottery process ultimately received a vending permit.  No applicants were placed on a wait-list, and there were vending sites left over at the end of the lottery."  Def. Supp., Declaration of Samuel Williams ("Williams Decl.") ¶ 3.  In light of the Williams' Declaration, the Court cannot conclude that Mr. Enten is likely to prevail on his claim that the District's regulatory scheme unconstitutionally limits the number of site permits and therefore is not narrowly tailored.  To the extent that there is a factual dispute between the parties whether vending sites remained after the 2007 lottery, this may be an issue for trial.  At this point, however, Mr. Enten has not raised a substantial likelihood that he can prove that the

District's permitting scheme is unconstitutionally restrictive as to the number of available vending locations.[4]

### 3.   Ample Alternative Channels of Communication

Having concluded that the permit and license requirements are narrowly tailored, the Court next must consider whether they leave open ample alternative channels of communication.  See ISKON of Potomac, Inc. v. Kennedy, 61 F.3d at 958.  Mr. Enten argues that because the statute and regulations apply to all public areas within the District of Columbia he is completely prevented from engaging in expressive activity unless he obtains a vending license and site permit and that such documents — in particular the site permit — are functionally unavailable.  If permits truly were unavailable for any location within the city, Mr. Enten's argument might be successful.  See Ayres v. City of Chicago, 125 F.3d 1010, 1016 (7th Cir. 1997); Bery v. City of New York, 97 F.3d 689, 697 (2nd Cir. 1996); but see Mastrovincenzo v. New York, 435 F.3d 78, 100-01 (2nd Cir. 2006).  As the Williams Declaration clarifies, however, Mr. Enten should have been able to receive a vending license and site permit had he applied for them properly in 2007.[5]

According to Mr. Williams, no applicants were placed on a wait-list for site permits, and vending sites remained available after the lottery.  See Willams Decl. ¶ 3.  It appears

---

[4]    Neither party has given the Court adequate information to conclude when or if the next site lottery will take place — or if there is in fact a moratorium on such lotteries.  Without some evidence that the District has failed to conduct additional site permit lotteries and does not plan to do so in the near future, plaintiff is not entitled to a preliminary injunction on this ground.

[5]    It remains to be proven at trial, of course, what actually happened to Mr. Enten's 2007 license and permit application.

17

that if Mr. Enten follows the District's regulatory requirements, he and others should be able to

receive vending permits and site licenses.  While the application process and participation in the

site lottery may not be immediate, that fact does not implicate First Amendment concerns.  As

noted, while awaiting a vending license and site permit Mr. Enten still may engage in expressive

activity by doing everything he does now except for *selling* the buttons.  The Court therefore

concludes that the means of communication available to Mr. Enten are adequate.  See

Mastrovincenzo v. City of New York, 435 F.3d at 101 (citing Heffron v. Int'l Soc'y For Krishna

Consciousness, 452 U.S. 640, 647 (1981) ("The First Amendment does not guarantee the right to

communicate one's views at all times and places and in any manner that may be desired.")).

### 4.  Undue Delegation of Authority

Finally, Mr. Enten argues that the permitting scheme places unbounded discretion

in the DCRA to discriminate in its issuance of licenses and permits because, under the

regulations, the DCRA has authority to give "priority" to certain categories of applicants for

vending licenses and because the 2009 Vending Regulation Act gives priority to certain vendors

in the site permit lottery.  A review of the relevant regulatory and statutory language reveals that

they provide no such undue discretion.  With regard to the issuance of vending licenses:

> The licensing agency shall issue licenses on a first come, first serve
> basis and within the following guidelines: (a) District residents or
> businesses who currently hold vending licenses shall be given first
> priority; (b) All other persons or businesses who have previously
> held vending licenses shall be given second priority; and (c) All
> other persons or businesses who are new applicants shall be given
> third priority.

D.C. Mun. Reg. § 24-505.5.  Similarly, the Vending Regulation Act of 2009 provides that

vendors who already possess licenses and have previously been assigned a vending location shall receive preference in lotteries for site permits.  D.C. Code § 37.131.04(c).  The categories of applicants identified by statute and regulation are sufficiently "narrow, objective, and definite" that they do not constitute an undue delegation of authority to the DCRA or give it the kind of discretion that could become a "means of suppressing a particular point of view."  A.N.S.W.E.R. Coalition v. Kempthorne, 537 F. Supp. 2d at 197 (quoting Forsyth County v. Nationalist Movement, 505 U.S. at 130-31); see also Douglas v. Brownell, 88 F.3d, 1511, 1522 (8th Cir. 1996).

## IV.  CONCLUSION

The Court concludes that Mr. Enten has not demonstrated that he is likely to prevail on the merits of his argument that the District's vending licensing and permitting regulations are an unconstitutional restriction on his First Amendment rights.  Although he is engaging in protected speech, the permitting and licensing scheme appears to be a permissible time, place and manner restriction.  Because the Court concludes that Mr. Enten has not shown that application of the license and permit requirements to his button sales violates his rights under the First Amendment, it also concludes that he is not faced with irreparable harm absent the issuance of an injunction.  Although having one's protected speech chilled can constitute an irreparable injury, Mr. Enten has not shown that his right to freedom of speech is restricted.  See Chaplaincy of Full Gospel Churches v. England, 454 F.3d 290, 301 (D.C. Cir. 2006) ("the loss of First Amendment freedoms, for even minimal periods of time may constitute irreparable injury . . . [but] movants must show that their First Amendment interests are either threatened or in fact

19

being impaired at the time relief is sought.") (internal citations omitted).  Absent both a showing

of a likelihood of success on the merits and irreparable injury, the Court need not address the

remaining factors for whether a preliminary injunction should issue.

            For the reasons explained above, the Court will deny Mr. Enten's application for a

preliminary injunction.  An Order consistent with this Opinion will issue this same day.


                      /s/_____

                      PAUL L. FRIEDMAN

                      United States District Judge

DATE:  December 22, 2009